UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN THE MATTER OF

ADAN PEREZ-PEREZ
Material Witness

Case No. 3:22-mj- 1267 – LLL

## UNITED STATES' APPLICATION FOR ISSUANCE OF MATERIAL WITNESS ARREST WARRANT

The United States of America, by the undersigned Assistant United States

Attorney, hereby applies pursuant to 18 U.S.C. § 3144 for issuance of a warrant for

the arrest of ADAN PEREZ-PEREZ as a material witness in the criminal

proceedings of United States v. Ge Tang, Case No. 3:22-mj- 1268-LLL, and United

States v. Yanshen Huang, Case No. 3:22-mj-1265-LLL .   For the reasons set forth

in the attached affidavit, the testimony of PEREZ-PEREZ is material in the criminal

proceedings against Tang and Huang and it would be impracticable to secure his

presence by subpoena.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:      _____

ARNOLD B. CORSMEIER
Assistant United States Attorney
Florida Bar No. 869139
300 N. Hogan Street, Suite 700
Jacksonville, FL 32202-4270
Telephone:   (904) 301-6300
Facsimile:    (904) 301-6310
E-mail:        chip.corsmeier@usdoj.gov

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
## AND MATERIAL WITNESS WARRANTS

I, James R. Burns, being a duly sworn and appointed Special Agent of the United States Department of Homeland Security, U.S. Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), hereby state as follows:

1. Your affiant has been in the federal law enforcement service for 24 years, initially as a U.S. Customs Inspector and then as a Special Agent of ICE. Your affiant has training and experience in the enforcement of the immigration and nationality laws of the United States. Your affiant also has training and experience in the preparation, presentation, and service of criminal complaints, arrest warrants, and search warrants.

2. The statements contained in this affidavit are based on your affiant's personal knowledge as well as information provided by other law enforcement officers. This affidavit does not contain every fact regarding the investigation but sets forth sufficient facts to establish probable cause to believe that no later than in or about December, 2020, through on or about May 11, 2022, in St. Johns County, in the Middle District of Florida, YANSHEN HUANG harbored aliens who were unlawfully present in the United States, for commercial advantage and private financial gain, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iii) and (a)(1)(B)(i).

3.     This affidavit also sets forth probable cause to believe that the testimony of FRANCISCO TIU-TIU, also known as Francisco Tojin-Mejia, and ADAN PEREZ-PEREZ, each of whom is a citizen of Guatemala, is material in the criminal proceedings against HUANG and GE TANG, that it would be impracticable to secure their presence by subpoena, and that therefore material witness warrants should be issued to secure their presence, pursuant to Title 18, United States Code, Section 3144.

4.     On September 15, 2020, your affiant performed routine follow-up queries regarding individuals arrested during an operation on August 19, 2020, in connection with another investigation.  Your affiant requested GPS tracking updates for Nelson Cristobal Tiu-Pacheco who had been encountered and administratively arrested during the investigation.  Although Tiu-Pacheco had been found to be unlawfully present in the United States, he was not detained by ICE because he was the sole guardian of his minor younger brother.  Your affiant wanted to ensure Tiu-Pacheco was not employed because he was not lawfully permitted to work in the United States and his obtaining employment without authorization would have been a violation of the conditions under which he was released by ICE.

5.     Your affiant requested GPS tracking updates for Tiu-Pacheco from BI Incorporated, which is the company contracted by ICE to monitor the location of aliens who are released with GPS tracking devices.  BI Incorporated emailed your affiant a snapshot report of all of the locations Tiu-Pacheco had visited during the

2

period of September 10, 2020, to September 15, 2020.  Among the locations he

frequently visited, the ones he visited most often and for the longest durations were

46 Tuscan Way, St. Augustine, Florida 32092, and 173 Mercutio Lane,

St. Augustine, Florida 32092 (hereinafter "RESIDENCE 1").

6.      On September 24, 2020, your affiant was notified by Supervisor Marco

Coloma with ICE's Enforcement and Removal Operations that Tiu-Pacheco had

recently cut off his ankle monitor, discarded it on Interstate 95, and absconded.  On

September 25, 2020, your affiant performed surveillance on the locations formerly

associated with Tiu-Pacheco in an attempt to locate him, as he was now an ICE

fugitive.  While performing this surveillance, your affiant learned that 46 Tuscan

Way in St. Augustine, Florida, was the address of Tanks Sushi Bistro Seafood &

Steaks (hereinafter "TSBSS") located in World Golf Village.  Your affiant also

learned that 173 Mercutio Lane (RESIDENCE 1) is a single-family residence located

less than 0.2 of a mile from TSBSS.

7.      A query by your affiant of the Florida Division of Corporations web site

(www.sunbiz.org) reflected that HUANG is the manager, registered agent, and

president of TSBSS, which was incorporated effective December 12, 2016.  The

records list the address of the business as 46 Tuscan Way, Suite 303, St. Augustine,

Florida 32092.  A query of the Florida Department of Motor Vehicles Driver and

Vehicle Information Database ("DAVID") reflected an address for HUANG of 173

Mercutio Lane, St. Augustine, Florida 32092 (RESIDENCE 1).  DAVID records

3

also show HUANG as the registered owner of a silver 2020 Toyota Sienna van with Florida license tag LUB J78, with a listed address of 302 Caribbean Place, St. Augustine, Florida 32259. From a query of the Person Centric Query System ("PCQS") immigration database, your affiant learned that HUANG was born in China and became a naturalized United States citizen on September 29, 2011.

8.    On the morning of December 11, 2020, your affiant performed video recorded surveillance of TSBSS and observed several individuals arrive at the business riding bicycles and on foot immediately before the opening of the restaurant. All of the individuals, who appeared to be Hispanic, gathered at the rear of the restaurant. Because some of the individuals were wearing coats, hoodies, and/or hats, your affiant could not determine whether any of the individuals was Tiu-Pacheco. Your affiant also observed a gray Toyota Sienna van with Florida license tag 625 2PY pull up behind TSBSS, driven by HUANG. HUANG emerged from the vehicle and talked to two Hispanic males sitting behind the business while pointing at boxes stacked there, apparently from a recent food delivery. She then proceeded inside via the front entrance, presumably to unlock the rear door and open the business for the day.

9.    On December 14, 2020, your affiant queried DAVID for Florida license tag 625 2PY and the records reflected that the vehicle was registered to GE TANG with an address of 83 Mercutio Lane, St. Augustine, Florida 32092 (hereinafter "RESIDENCE 2"). Your affiant queried the PCQS database and learned that

4

TANG was born in China and became a naturalized United States citizen on
October 6, 2011.

10.     On December 16, 2020, your affiant queried TANG's name in the
Florida Division of Corporations web site (www.sunbiz.org) and discovered that he
is the registered agent and president of Tank's Sushi Inc., which operates a restaurant
called Tanks Sushi Bistro (hereinafter "TSB") located at 151 Pine Lake Drive, Suite
A, Ponte Vedra, Florida 32092. A query of a Jacksonville Electric Authority
database revealed that TANG was the responsible party for paying utilities at both
the residence at 302 Caribbean Place, St. Johns, Florida 32259, and TSB.

11.     The query of the Florida Department of Corporations web site also
showed that TANG was previously the registered agent and president of TSBSS,
under the former name Tank's Sushi Bistro Inc., but that he had voluntarily
dissolved the business on August 11, 2017.  On December 12, 2016, HUANG had
filed for incorporation of TSBSS with the State of Florida.  These records appear to
show that TSBSS and TSB, and their owners, are closely related.

12.     Records returned as a result of queries by your affiant of the St. Johns
County Property Appraiser's website reflect that the residence at 173 Mercutio Lane,
St. Augustine, Florida 32092 (RESIDENCE 1), is co-owned by HUANG and
Dengfu Tang and Lei Lin.  A review of TANG's Alien Registration files ("A-files")
revealed that Dengfu Tang and Lei Lin are TANG's father and mother,

respectively.[1] The property appraiser records also reflect that HUANG exclusively owns the residence at 302 Caribbean Place, St. Augustine, Florida 32259, and that TANG exclusively owns the residence at 83 Mercutio Lane, St. Augustine, Florida 32092 (RESIDENCE 2).

13.     During surveillance conducted by your affiant on numerous occasions, your affiant observed and video recorded groups of five or six individuals who appeared to be Hispanic emerge from RESIDENCE 1 and proceed on foot or by bicycle to TSBSS. These individuals then congregated behind the restaurant and awaited HUANG's arrival to begin the workday. Your affiant occasionally observed TANG picking up and transporting individuals between RESIDENCE 1 and TSB. Your affiant surveilled and video recorded the movement of workers to the restaurant(s) on the following dates:

- December 11, 16, 17, and 18, 2020.

- January 7 and 8, 2021.

- February 2, 9, and 11, 2021.

- March 3, 11, and 12, 2021.

- April 6, 2021.

- August 16, 2021.

---

[1]     An A-file is a central file maintained by immigration agencies that contains documents related to the interactions and encounters of United States immigration authorities with an alien.

6

- October 22, 2021.

- November 15, 2021.

- December 11 and 16, 2021.

- January 25, 2022.

- March 29, 2022.

- April 6, 13, 18, 22, and 26, 2022.

On some of these occasions, one or two individuals would be picked up by either the Toyota van bearing Florida tag LUB J78 or the Toyota van bearing Florida tag 625 2PY. The van, driven by TANG, then proceeded directly to the TSB restaurant and the individuals were dropped off near the rear door of TSB. These individuals sometimes unloaded what appeared to be supplies for the restaurant from the van and took them into the restaurant through the rear door. From these observations and your affiant's training and experience, especially arising from previous restaurant alien harboring investigations, your affiant believes that the individuals living at RESIDENCE 1 work at TSBSS or TSB or both.

14.    On numerous occasions beginning in December 2020, your affiant video recorded activity at 83 Mercutio Lane (RESIDENCE 2) while driving by the residence. Your affiant often observed the Toyota van bearing Florida tag 625 2PY and the Toyota van bearing Florida tag LUB J78 parked in the driveway. If the garage door was open, your affiant also observed what appeared to be restaurant supplies in the garage. On October 22, 2021, your affiant observed and video

7

recorded two Asian females wearing a work uniform of all black attire walking from RESIDENCE 2 and heading in the direction of TSBSS immediately before the restaurant's opening time. Your affiant witnessed this activity on several other occasions as well. On April 22, 2022, your affiant observed HUANG among boxes that were in the garage of RESIDENCE 2 and a van parked in the driveway with the rear hatch open. A short time later, your affiant observed HUANG at TSBSS unloading boxes out of the rear of the van that were then taken into the restaurant. On May 2, 2022, your affiant witnessed a single Asian female wearing a work uniform of all black attire deposit some trash into containers in front of RESIDENCE 2 and then walk up the sidewalk in the direction of TSBSS.

15.     On May 12, 2021, your affiant asked a patrol officer from the St. Johns County Sheriff's Office ("SJCSO") to perform a traffic stop on the van bearing Florida tag LUB J78 while the van was travelling from 173 Mercutio Lane (RESIDENCE 1) to TSB. Your affiant made this request to try to identify individuals currently employed at TSB and/or TSBSS and to determine these employees' current immigration status. The SJCSO officer conducted the traffic stop and obtained identifying information for the individuals in the van, which he provided to your affiant. Your affiant queried immigration databases for the identified individuals and learned the following:

Driver:              GE TANG
                     DOB: ███/1981[2]
                     Naturalized U.S. citizen

Passenger:           Miguel Brito
                     DOB: ███/1994
                     Immigration records found

Passenger:           Jose Tem Tum
                     DOB: ███/2002
                     No immigration records found

Passenger:           Manuel Tiu
                     DOB: ██/1998
                     No immigration records found

Passenger:           Juan Tu Tum
                     DOB: Unknown
                     No immigration records found

Passenger:           Zhao Chen
                     DOB: ██/2001
                     Immigration records found

Based on the foregoing information and your affiant's training and experience, your affiant believes Jose Tem Tum, Manuel Tiu, and Juan Tu Tum were unlawfully present in the United States and therefore were not legally authorized to reside or work in the United States.

16.    On December 17, 2020, your affiant tasked HSI Jacksonville's Auditor, Michael D. Clay, to request payroll records for TSBSS from the State of Florida. He requested a three-year history of the Form UCT-6 Wage Detail Report for the

---

[2]    Your affiant is aware of the dates of birth of these individuals but the dates have been redacted to keep this personal identifying information from being disclosed in the public record.

9

restaurant. Auditor Clay obtained these records and provided them to your affiant. Your affiant reviewed these records and found that for the period from January 1, 2017, to November 5, 2020, HUANG appears on the wage reports but none of the employees who were in the van that was stopped by the SJSO officer on May 12, 2021, are listed in the reports.

17.     On October 20, 2021, your affiant learned from an SJCSO detective who is also an HSI Task Force Officer ("TFO") that an SJCSO employee who lives in the Murabella community, in which 173 Mercutio Lane (RESIDENCE 1) is located, had complained to SJCSO on February 16, 2021, about the excessive number of occupants living at RESIDENCE 1. Your affiant obtained a copy of the incident report regarding this complaint, which stated that the SJCSO employee suspected that "human trafficking" was occurring at RESIDENCE 1. On October 20, 2021, your affiant learned that another neighbor had complained to SJCSO about being harassed while out jogging in the early morning of June 28, 2021. Your affiant obtained a copy of the incident report regarding this complaint, which stated that a Hispanic male came from the driveway of RESIDENCE 1 and began to run after the complainant while trying to initiate a conversation. TANG was subsequently contacted by SJCSO and he stated that the subject had resided at RESIDENCE 1 but that TANG had "kicked him out." TANG said that he did not know the subject's true name but called him "Daniel." In January 2022, your affiant learned that a third concerned neighbor had complained to the community's

homeowners' association about the large number of people residing at the residence. This neighbor had initially made this complaint to SJCSO and the SJCSO TFO mentioned above passed this information, including the complainant's contact information, to your affiant.  Your affiant then contacted this neighbor who said that large piles of used furniture and household effects were stacked on the curb in front of RESIDENCE 1 and it looked like the occupants were moving out.  In light of this information, your affiant investigated whether HUANG or TANG had obtained an alternative residence for TSBSS employees.

18.     On March 29, 2022, your affiant subpoenaed records from Florida Power and Light and the records reflected that TANG was responsible for paying utilities at a residence located at 5860 Pine Creek Drive, St. Augustine, Florida 32092 (hereinafter "RESIDENCE 3").  Your affiant queried the St. Johns County Property Appraiser web site for records regarding this property and the records reflect that it was owned by TANG, having been purchased by him on January 19, 2022.

19.     Subsequently, your affiant drove to RESIDENCE 3 and observed it and the surrounding homes.  Your affiant determined that in-person surveillance of RESIDENCE 3 would be difficult, given the location and layout of the homes on the street.  On April 4, 2022, your affiant left a business card at the home across the street from RESIDENCE 3 after knocking on the front door and getting no answer. Late in the afternoon on the same date, the resident of the home across the street called your affiant and stated that he was a retired Deputy United States Marshal.

11

After briefly explaining the nature of the investigation, your affiant asked if he would be willing to allow the installation of a camera on his property to record activity occurring at RESIDENCE 3 and he said that he would allow such a camera to be installed.

20. On April 12, 2022, your affiant went to the home across the street from RESIDENCE 3 and spoke to the resident to whom your affiant had spoken over the telephone on April 4, 2022. The resident stated that the current occupants of RESIDENCE 3 had moved into the residence in the late January or early February 2022 timeframe. He said that they all looked Hispanic and were picked up mid-morning every day by an Asian female or an Asian/Hispanic-looking male driving a silver or gray Toyota van and that they come home late at night.

21. On April 14, 2022, your affiant installed a covert trail camera on the property across from RESIDENCE 3 that recorded vehicles leaving from and arriving at the residence. Your affiant reviewed these recordings and they captured the gray Toyota van bearing Florida license tag 625 2PY, which is registered to TANG, often being driven by an Asian female who resembles HUANG. On occasion the vehicle was driven by a male who appears to be Hispanic. The recordings show the van, on a daily basis, picking up and dropping off five to six Hispanic males. The van arrives and departs on a regular schedule that closely coincides with the opening and closing times for TSBSS.

12

22.     Based upon your affiant's training and experience, including previous investigations of restaurant operators who harbored undocumented alien workers, your affiant knows that restaurant operators often provide a residence or residences to house the aliens. Rooms in these residences that are not usually used as bedrooms, such as living rooms and dining rooms, are often divided into additional rooms through the use of temporary walls. These "bedrooms" are usually sparsely furnished and the aliens often sleep on the floor. The aliens maintain their belongings, sometimes including passports or other identification documents, in these rooms.

23.     Your affiant also knows from training and experience that persons who operate a business maintain employee records to include biographical information, payroll information, and immigration-related documents. These can be maintained at the business and/or at the residence of the business operator. Your affiant also knows that persons involved in operating a business tend to retain letters, documents, notes, ledgers, messages, financial transaction records, accountings, computers, software, hardware, or other instrumentalities to protect and record their substantial financial outlays or affairs.

24.     Your affiant also knows that businesses are required under the law to complete and maintain a Form I-9, Employment Eligibility Verification, for each employee. All employees—citizens and non-citizens—are required to complete Section 1 of a Form I-9 at the time of hire. In Section 1, the employee provides

13

information to establish that they are legally permitted to work in the United States.
The employer is required to complete Section 2 certifying that the employer has
examined the documents the employee presented as proof of the right to work in the
United States within three business days after the date of employment. After the
completion of the Form I-9, employers must make this form available for inspection
by ICE officers and employees of the Department of Labor.

25.    On May 9, 2022, your affiant applied for and obtained search warrants
from this Court authorizing the search of TSBSS (Case No. 3:22-mj-1241-PDB),
RESIDENCE 1 (Case No. 3:22-mj-1242-PDB), RESIDENCE 2 (Case No. 3:22-mj-
1243-PDB), and RESIDENCE 3 (Case No. 3:22-mj-1244-PDB).

26.    On May 10, 2022, your affiant briefed an SJSO deputy regarding the
Toyota van bearing Florida tag 625 2PY that had been under surveillance during the
investigation. Your affiant advised the officer that the van would be departing
RESIDENCE 2 at about 10:15 a.m. and would be driving to RESIDENCE 3 to pick
up and transport suspected undocumented aliens to TSBSS. Your affiant discussed
with the officer that search warrants would be executed on May 11, 2022, and
requested that the officer conduct a traffic stop of the van the next morning, if
probable cause existed to support such a stop.

27.    On May 11, 2022, at approximately 10:10 a.m., the SJSO deputy
located the van and subsequently established probable cause to perform a traffic stop.
At approximately 10:30 a.m., the van was stopped in the parking lot of TSBSS.

14

Your affiant went to the site of the traffic stop and observed approximately six occupants in the van, including HUANG, who was driving.  ICE HSI and Border Patrol agents also went to the site of the stop and interviewed the occupants regarding their immigration status.  One of these occupants was identified as ADAN PEREZ-PEREZ, who agents determined was a citizen of Guatemala who was present in the United States without legal authorization.

28.     In addition, upon entering TSBSS to execute the search warrant, additional individuals who worked at the restaurant were encountered and interviewed to determine their immigration status.  One of the individuals was identified as FRANCISCO TIU-TIU, who agents determined was a citizen of Guatemala who was present in the United States without legal authorization. TIU-TIU and PEREZ-PEREZ were transported to the Jacksonville Border Patrol Station for administrative processing.

29.     During administrative processing, your affiant, HSI Special Agent Donnie Wells, and Border Patrol Agent Joseas Montes interviewed TIU-TIU in the Spanish language.  During the interview, TIU-TIU stated the following:

    a.     That his name is FRANCISCO TIU-TIU and that he was born
           in Guatemala on a date in June 1996 and is a citizen of
           Guatemala.

    b.     That he entered the United States illegally on foot by entering
           Texas from Mexico about seven years ago.

15

c.    That he has worked at TSBSS for approximately one year.

d.    That his boss is Chinese and he calls her "Jennifer," and when he was shown a photograph of HUANG, he identified HUANG as "Jennifer."

e.    That he was never asked by "Jennifer" to complete a Form I-9 and he never told "Jennifer" that he did not have documents.

f.    That he gets paid $3,500 per month in cash by the person who hired him (HUANG).

g.    That "Jennifer" provides him with housing, transportation, food, medicine, and bedding and that he does not pay rent or utilities.

h.    After being shown a Form I-9, that he had never seen such a form and was not asked to fill one out for employment.

i.    That he had never provided any type of identification for employment when hired.

j.    That he works six days a week and his day off is Monday and that he starts work at approximately 10:00 a.m. and works until 10:00 p.m.

30.    Checks of immigration databases reflected that TIU-TIU was previously encountered in 2014, at which time he was identified as Francisco Tojin-Mejia, and was ordered deported by an Immigration Judge.

31.     During administrative processing, your affiant, HSI Special Agent
Donnie Wells, and Border Patrol Agent Joseas Montes interviewed PEREZ-PEREZ
in the English language.  During the interview, PEREZ-PEREZ stated the following:

   a.    That his name is ADAN PEREZ-PEREZ and that he was born
         in Guatemala on a date in March 1991 and is a citizen of
         Guatemala.

   b.    That he entered the United States illegally on foot by entering
         Arizona from Mexico in July 2008.

   c.    That he has worked at TSBSS for approximately three months.

   d.    That his boss is Chinese and he calls her "Jennifer," and when he
         was shown a photograph of HUANG, he identified HUANG as
         "Jennifer."

   e.    That he was never asked by "Jennifer" to complete a Form I-9
         and he never told "Jennifer" that he did not have documents.

   f.    That he gets paid $400 per week by check by the person who
         hired him (HUANG).

   g.    That "Jennifer" provides him with housing (but stated that he
         only lives there about half the time) and food, and that he does
         not pay rent or utilities.

   h.    After being shown a Form I-9, that he had never seen such a
         form and was not asked to fill one out for employment.

    i.      That he had never provided any type of identification for employment when hired.

    j.      That he works six days a week and his day off is Sunday and that he works four to five hours per day.

32.     Checks of immigration databases reflected that PEREZ-PEREZ was never previously encountered by an immigration officer.

33.     Because TIU-TIU and PEREZ-PEREZ are citizens of Guatemala who are illegally present in the United States, they will be either deported or released pending immigration proceedings and, in either event, if they are not arrested as material witnesses, it is likely that they could not or would not appear to testify in the criminal case against HUANG and TANG pursuant to subpoenas.

34.     During the execution of the search warrant for RESIDENCE 3, your affiant observed that it was a prefabricated trailer that appeared to originally contain three bedrooms. However, the living space outside of those bedrooms had been modified to provide an additional six bedrooms that were framed using wood framing. These additional bedrooms had individual doors with locks, suggesting that each room belonged to an individual person. Each room contained a bed, a small walkway, and personal effects. Many of the rooms contained identification documents for the person who resided in that room. The residence contained a kitchen and laundry room in a common area, which appeared to be utilized by all of the occupants.

18

35.   Based upon the foregoing facts, your affiant believes there is probable cause to establish that from an unknown date but no later than in or about December, 2020, through on or about May 11, 2022, in St. Johns County, in the Middle District of Florida, YANSHEN HUANG harbored aliens who were unlawfully present in the United States, for commercial advantage and private financial gain, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iii) and (a)(1)(B)(i), and that FRANCISCO TIU-TIU, also known as Francisco Tojin-Mejia, and ADAN PEREZ-PEREZ are material witnesses for whom material witness arrest warrants should be issued, pursuant to Title 18, United States Code, Section 3144.

James R. Burns, Special Agent
Homeland Security Investigations

Sworn to and subscribed before me
this _13__ day of May, 2022.

Monte C. Richardson
United States Magistrate Judge

19